FILED
2015 Jun-16 PM 03:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA, *
Plaintiff, * 2:15-cr-130-VEH-JEO-1
* June 15, 2015
vs. * Birmingham, Alabama
* 2:59 p.m.
PETER ALAN LODEWICK, *
Defendant. *
****************************

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE VIRGINIA EMERSON HOPKINS
UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES:

MR. ERIC W. HUNTER, ESQ.
U.S. ATTORNEY'S OFFICE
1801 4th Avenue North
Birmingham, AL 35203
205-244-2001

FOR THE DEFENDANT:

MR. JAMES R. STURDIVANT, ESQ.
SIROTE & PERMUTT
2311 Highland Avenue South
P O Box 55727
Birmingham, AL 35255-5727
205-930-5124

***CHERYL K. POWELL, CCR, RPR, FCRR***
Federal Official Court Reporter
1729 Fifth Avenue, North
Birmingham, AL 35203
256-508-4050/wrd4wrdrpr@aol.com

**P R O C E E D I N G S**

THE COURT: The matter before the Court is the United States of America versus Peter Alan Lodewick, Case Number 15-130.

14:59:31 Is there any reason to seal the transcript of this hearing?

MR. HUNTER: No, Your Honor.

THE COURT: All right. Before I start up, I'm going to ask and perhaps you've -- perhaps defense

15:00:07 counsel has given -- Mr. Sturdivant has given Mr. Hunter a heads up from the previous plea that I took today about identical -- virtually identical conduct, a doctor writing prescriptions for controlled substances other than for a legitimate medical purpose and doing so knowingly, pleading

15:00:39 guilty to a violation of 21 United States Code, Section 841(a)(1) versus a doctor in this case, Dr. Lodewick -- in a blinding plea versus a doctor in this case pleading guilty to aiding and abetting other persons fraudulently or by material misrepresentation obtaining controlled substances in

15:01:17 violation of 21 United States Code, Section 843.

The violation of 841 has a maximum penalty of 20 years, and violation of 843 has a maximum penalty of four years.

In both cases, it is a doctor writing prescriptions

15:01:40 that they know are not for medical purposes and are for

controlled substances.

So Mr. Hunter, please tell me why there's such a disparity. I do note there's a difference in race of the two defendants. The first doctor was African-American, and this doctor appears to be white.

15:02:07

MR. HUNTER: Well, I don't know --

THE COURT: Why is there a different charge against this doctor?

MR. HUNTER: I don't think there's any difference in terms of race in terms of how we analyze the cases. So I think you can just assure yourself that that never came into play, Your Honor.

15:02:18

THE COURT: Well, I didn't -- I don't know people's race until they walk into my courtroom. But I am noting -- I mean, he was just here. And I have eyes. So --

15:02:34

MR. HUNTER: The agreement that I had with Dr. Lodewick was arrived at weeks before any plea negotiations began with Dr. Claybon. So I just did what I thought was best in this case.

I had nothing to do with the plea agreement that was arrived at with Dr. Claybon.

15:02:55

THE COURT: Well, they both have binding pleas for four years probation. So terms of the punishment -- the sentence -- the custodial portion is identical. I notice in the plea agreement in this case that

15:03:15

this defendant, it states, has already surrendered his Alabama controlled substances license.

MR. HUNTER: Correct, Your Honor.

THE COURT: In the Dr. Claybon case, he also agreed to surrender his medical license. There is no mention of that in this plea agreement. But I don't know that there needs to be one. And that would be one question I would have, because it says at Page 8 of the plea agreement: As to any other terms and conditions of the sentence other than the term of imprisonment, the parties fully and completely understand and agree that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the parties is not binding upon the Court and that the Court need not accept any other recommendations.

Further, the defendant understands that if the Court does not accept the parties' recommendation as to any terms and conditions of the sentence, other than the term of imprisonment, he does not have the right to withdraw his plea other than the right previously addressed as to the term of imprisonment under Rule 11(d)(2).

So I am asking both parties what y'all were contemplating by that language. In other words, does the defendant think he has reserved the right to withdraw his plea of guilty if I say that one of the conditions of his sentence is that he surrender his medical license?


MR. HUNTER: I believe the language clearly states that's within your discretion, Your Honor.

THE COURT: Well, what does the defendant think that the defendant is agreeing to?

15:05:17 MR. STURDIVANT: We agree, Your Honor, that the binding nature of the plea agreement as contemplated, at least from my perspective as lead counsel for Dr. Lodewick, is that the binding language of the agreement is as to any custodial sentence and probation 15:05:34 period. As stated here, the Court otherwise has discretion to sentence in accordance with the law.

THE COURT: Well, under 843 -- I'm sorry. 841, forfeiture is alleged. There's no forfeiture allegation in this information. So can I order forfeiture when there's 15:05:57 no forfeiture allegation in the information?

MR. HUNTER: I believe the contract law would control sort of amendments to the plea agreement or, you know, the defendant could agree to forfeit it. I think, Your Honor, you could put as part of his probation a 15:06:22 requirement that he not practice medicine during the four years that he's under your supervision or that he not seek reinstatement, Your Honor, because this is what I've understood when I was crafting this is that Dr. Lodewick surrendered his license to distribute controlled substances. 15:06:43 They can't have a state license without that DEA license.

And this is in discussions with the state officials I've had. Coupled with a felony conviction, it effectively ends his practice as a doctor. And that was my chief concern when drafting a charge and plea was to end his practice so that he could no longer engage as a doctor and no long distribute controlled substances.

The state, you know, as the plea agreement says, it doesn't bind any other authority or Government from seeking some actions. And I believe the state will work to secure and make sure that he doesn't keep his license. But in any event, he can't -- the state license is almost useless so long as he doesn't have the DEA license which he will not be able to get, based upon this conviction and his voluntary surrender.

THE COURT: Well, there are cases under 843 that say that ordering that the defendant surrender -- in this case it was a pharmacy license -- as a special condition of probation was an abuse of discretion in a prosecution for filing false information on federal drug form where state law set forth well-defined procedures to determine whether revocation of defendant's license is an appropriate sanction and provided defendant with meaningful opportunities to contest imposition of such sanctions -- that was a Second Circuit decision in 1988.

So I'm not sure that I do have that discretion. I

didn't see any 11th Circuit law on it.

I believe that this defendant's admitted facts are that he's violated 841(a)(1)(A) and (b)(1)(C), which is dispensing a controlled substance for other than a -- without a legitimate medical purpose and outside the usual course of professional conduct.

I believe that this defendant may also have aided and abetted other people in obtaining a controlled substance by -- it says misrepresentation, fraud, forgery, deception, or subterfuge.

What was the misrepresentation, fraud, forgery, deception, or subterfuge of the other person to the pharmacist?

MR. HUNTER: That they were presenting a legitimate prescription.

THE COURT: It was. Why wasn't it a legitimate prescription? It's written by a doctor who is licensed to write it.

MR. HUNTER: It's written not for a legitimate medical purpose and outside the usual course of practice.

MR. STURDIVANT: Your Honor, if I may very briefly.

THE COURT: Yes, sir.

MR. STURDIVANT: I believe that the

parties in this case -- the Government and counsel for Dr. Lodewick -- went back and forth several times with draft factual bases.

15:10:43 Ultimately, we did agree that the prescriptions were issued outside the usual course of professional practice and, thus, aided and abetted the deception of the pharmacist by M.E. and others.

However, we -- these were people -- patients that Dr. Lodewick did have a doctor/patient relationship with. 15:11:06 These -- I don't believe there's ever been an allegation that any of the persons for whom prescriptions were written did not have a valid need for that medication. The issue is the amount of medication as well as the practices of Dr. Lodewick, for example, in terminating a patient for 15:11:27 suspected abuse of medication but then sometime later writing another -- a subsequent prescription, things of that nature.

So again, we recognize that Dr. Lodewick bears responsibility for his actions, but we do believe there's a distinction. And whether his conduct would violate 841 or 15:11:49 not, that, again, was the subject of some negotiation between the U.S. attorney's office and the defense.

And if I could just very briefly finish, Your Honor, on this point, the evidence in this case basically would be the medical records, the testimony perhaps of some of the 15:12:09 persons to whom he wrote prescriptions. Some of them have

 their own collateral issues that might make them not as credible as a witness ordinarily would be. And there was no undercover-type recordings or observation or anything of that nature.

15:12:28 So while the cases are similar, I do think they are factually distinguishable as well as the fact this was negotiated well before Dr. Lodewick was charged. And that's why we have the information.

THE COURT: Well, what I have to do --

15:12:44 okay. Let me -- Dr. Lodewick wasn't here earlier. So let me say this to you, Dr. Lodewick: Because it's a binding plea agreement, I have to decide two things. Usually at a plea hearing, I decide one thing: Did the defendant admit that he did acts which together prove all the necessary elements of

15:13:19 the crime that he's pleading guilty to. And I have to do that in your case.

And the second thing I have to do, because it's a binding plea agreement, is decide whether or not I am going to accept the plea agreement. Now, I don't have to decide

15:13:40 that in a nonbinding plea agreement case because I'm not bound by it. It's just a contract between the defendant and the Government. But in this case, it's a contract with me. So like any other contract, everybody to the contract needs to decide whether they're willing to be bound by it.

15:14:04 It is my practice and it is normal practice to defer

15:14:32

deciding whether or not to accept the plea agreement until after I've seen the presentence investigation report which is a very thorough document and tells me everything that the probation officer, after interviewing you and interviewing the United States attorney and talking to your attorneys, choose to tell me about your entire life and your entire -- it could be relevant medical history.

15:14:50

Some people appear in front of me, and they're drug addicts or they're alcoholic or they have kidney failure. So I get a lot of -- or they had abusive childhoods -- an abusive childhood. And I get told all that.

15:15:08

I get told whether they've been arrested and for what, whether they've ever been convicted of anything and what they were convicted of and whether or not they were represented by an attorney. And I get told all kinds of information that's called relevant conduct which is facts relating to -- that's not necessarily necessary to prove the crime but that relates to the crime that I am sentencing the person for. And then I decide what the appropriate sentence is.

15:15:31

Well, in your case, here you are today. I won't get that presentence investigation report for a period of weeks. At least eight. And so I'm going to -- for all I know, this is the 53rd time that you've done this and been convicted of it. I'm sure that's not true, but I don't -- I say I'm sure

15:15:55

15:16:13 that it's not true, but I don't have any facts upon which to base that sureness.

So I can't decide whether or not it is a reasonable sentence for you today. So if I decide later that it is not a reasonable sentence for you, then you have the right to withdraw your guilty plea. And it's as though it never happened.

15:16:30 Okay. Also the Government, I think, has the right -- like, if I decided to give you six months probation instead of four years probation, I think the Government has the right to say, no; the plea agreement is off.

Mr. Hunter is shaking his head yes.

MR. HUNTER: I believe that's correct, Your Honor.

15:16:45 THE COURT: So it's either four years probation or there is no plea. But today what I'm trying to decide is whether or not what you did is the crime you're pleading guilty to. And I have to do that in every case.

15:17:05 And I'm not sure that what you did meets the elements of the crime you're pleading guilty to. And that ought to concern everyone because -- well, perhaps -- I mean, there is an appeal waiver. So perhaps not.

15:17:38 Maybe the Government -- I mean, the defendant can't appeal as long as I sentence the defendant to four years. And the Government probably won't appeal as long as I

sentence the defendant to four years. But I try really hard not to sentence people to crimes except those -- convict people of crimes other than those they committed. It matters to me.

15:17:57 So I'm just not sure that you committed the crime of aiding and abetting somebody else in deceiving a pharmacist by writing a prescription. Because I'm not sure that that other person deceived the pharmacist. That's my problem. My problem is not that you shouldn't have written the prescriptions. 15:18:22

My problem is did your writing the prescriptions help the person you gave the prescription to obtain possession of a controlled substance -- I absolutely have no problem with that.

15:18:39 Now, here's my problem. By misrepresentation, fraud -- forgery would not be applicable -- deception, or subterfuge. Let's look at that.

MR. HUNTER: Your Honor, if I may.

THE COURT: Yes. Because I looked for a case on this. 15:19:11

MR. HUNTER: The prescriptions written by Dr. Lodewick were problematic on their face. And in the course of the investigation, I've interviewed several pharmacists who filled prescriptions that were written by Dr. Lodewick. First of all, in their view, it is from a 15:19:28

15:19:37 doctor, so they thought it was legitimate.

THE COURT: Sure.

MR. HUNTER: Second -- so that -- first of all, the deception is that it's not legitimate.

15:19:37 THE COURT: But the doctor is deceiving. Not the patient. The patient has to be deceiving the pharmacist.

MR. HUNTER: Well, the patient is deceiving because the patient knows it's not legitimate.

15:19:47 THE COURT: Okay.

MR. HUNTER: And then, Your Honor, there is also, the evidence would show, contact between the pharmacies and the doctor, his office, wherein they questioned them. And the doctor ratified it, saying, I did write it; it is good.

15:20:10 So there is -- the deception here I believe is true that he aided them to get prescriptions they were not entitled to; that they shouldn't have had.

THE COURT: I absolutely believe that he

15:20:23 aided them. I also believed that he dispensed controlled substances. Okay?

MR. HUNTER: That's right.

THE COURT: Without -- and violated 21 USC, Section 841(a)(1). Now, for 843 -- let me see the case

15:20:52 I found on 843. Anyway -- and of course, we've added aiding

and abetting. See, aiding and abetting is helping somebody else do something that, if you did it, it would be illegal, Dr. Lodewick. That's a very unlawyerly way of saying that. And so then I have to -- I believe that Dr. Lodewick aided and abetted. No problem.

So let's put it this way: Where -- how can he admit that the individuals he gave the prescription drugs to knew that they weren't supposed to be getting prescription drugs, controlled substances?

MR. HUNTER: Because he knew their patient history. He knew their medical needs. He knew the circumstances of which he gave them. He knew that it was outside the scope, and they were asking for them outside the scope and that he was writing them more frequently than he should have. And he knew that these people were drug users, and he wrote it in the patient files. So he knows they know they're not supposed to be getting them, and he gave it to them anyway.

THE COURT: Where is that in the factual basis for the plea; that he knows they're drug users?

MR. HUNTER: It's not in there. It's not all the facts in the case.

THE COURT: Well, I understand. I know you're not going to put all the facts in the case. I need all the facts necessary to prove the elements of the case.

15:22:52

But they don't have to be in the plea agreement. They can be stipulated orally on the record. But I don't want to get into your plea agreement, but I'm not going to accept a plea to a crime that's not -- that the elements aren't all proven by either the factual statements -- the admissions of the defendant in court under oath or the factual basis for the plea agreement.

MR. STURDIVANT: Your Honor, may I?

THE COURT: Yes, sir.

15:23:07

MR. STURDIVANT: There is language in the factual basis on Page 3, indicating that Dr. Lodewick wrote letters, terminating the physician/patient relationship because of concern over the behavior of at least three patients. And then went on and later, at a later time, wrote prescriptions for those individuals.

15:23:28

THE COURT: Actually it says accompanied each termination letter with a prescription for a large amount of opiates.

MR. STURDIVANT: That would also be part of the problematic conduct.

15:23:40

Again, Your Honor, I'm here as an advocate for my client. But at the same time, you know, we certainly felt -- and it was a very difficult decision for Dr. Lodewick. But we did engage in prolonged back-and-forth negotiations with the Government. We even took the position at one point that

15:23:57

   he shouldn't be charged with any crime. And there was a period of time that went back and forth as Mr. Hunter and his agents assessed the situation.

But ultimately, you know, the language that was agreed to in the plea agreement did contain this -- this behavior. And again, the problematic behavior primarily being that of notifying or, in some cases, writing on the chart.

I don't know if this is in this plea agreement, but there was evidence in the case that people were terminated because he was concerned that they were using prescription medication and then later he still wrote prescriptions for those individuals.

THE COURT: I think a necessary underpinning of this plea is that Margaret Earnest and other patients of Dr. Lodewick's who Dr. Lodewick knew he was writing prescriptions for for other-than-a-medically necessary or appropriate purpose were deceiving pharmacists into giving them drugs.

Is that not a necessary underpinning of this case?

MR. HUNTER: Yes.

THE COURT: Okay. So let's take a hypothetical. There's a 5K in this agreement. Suppose Dr. Lodewick testifies against Margaret Earnest and others and a jury finds that they're not guilty of obtaining

prescriptions -- controlled substances by deception or fraud or misrepresentation. Now, a jury can find anything it wants to find. I understand that. That doesn't mean -- I guess my problem is then you have a necessary underpinning for his being guilty gone. It's gone legally. It may not be gone in fact.

Is there evidence that the Government would offer at a trial, if Dr. Lodewick would go to a trial, to show that Margaret Earnest and the others -- I'm reading the language from Page 3 -- deceived pharmacists using prescriptions written by Dr. Lodewick?

MR. HUNTER: I believe that that was what they did, because the pharmacists did, in fact, seem to be deceived.

THE COURT: I'm asking you to help me out with some facts here. Not conclusions.

MR. HUNTER: Well, I'm sorry, but most of what you're asking for relates to an ongoing investigation. And I prefer not to discuss it here.

I think Dr. Lodewick is prepared to admit to whatever facts you need to -- and, in fact, by pleading guilty, he is telling you that he's done what -- you know, he's met all the elements of the statute.

So -- and so I think that's where we are. I mean, he's telling you I did this thing.

18

15:28:51

THE COURT: I would like that last statement transcribed and emailed to me.

All right. I'm not going to accept this plea. I don't find that the elements have been met. The Government retains its right not to disclose necessary facts to me in order for me to find they have been met. The case will be set for trial.

Court is adjourned.

Do you need that protective order entered?

15:29:16

MR. HUNTER: Please.

THE COURT: I'll look at it and see if it is acceptable.

(The Proceedings were concluded at approximately 3:29 p.m. on June 15, 2015.)

***CHERYL K. POWELL, CCR, RPR, FCRR***
Federal Official Court Reporter
1729 Fifth Avenue, North
Birmingham, AL 35203
256-508-4050/wrd4wrdrpr@aol.com

19

C E R T I F I C A T E

I, the undersigned, hereby certify that the foregoing pages contain a true and correct transcript of the aforementioned proceedings as is hereinabove set out, as the same was taken down by me in stenotype and later transcribed utilizing computer-aided transcription.

This is the 16th day of June of 2015.

Cheryl K Powell

Cheryl Renae King Powell, CCR, RPR, FCRR
Federal Certified Realtime Reporter

***CHERYL K. POWELL, CCR, RPR, FCRR***
Federal Official Court Reporter
1729 Fifth Avenue, North
Birmingham, AL 35203
256-508-4050/wrd4wrdrpr@aol.com